**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

MAURICE JOHNSON,

      Petitioner,

v.

BARBARA BOCK, Warden,

      Respondent.

_____/

CIVIL ACTION
NO. 00-CV-10497-BC

DISTRICT JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE CHARLES BINDER

FILED

2003 APR -2 P 1: 29

U S DIST. COURT CLERK
EAST DIST. MICH.
BAY CITY

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON SECOND AMENDED PETITION FOR WRIT OF HABEAS CORPUS
### (Dkt. 7)

**I.**    **RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the Second Amended

Petition for Writ of Habeas Corpus be **DENIED** and the case be **DISMISSED WITH**

**PREJUDICE.**

**II.**    **REPORT**

Pending, pursuant to an Order of Reference from United States District Judge David

Lawson (Dkt. 11), is Maurice Johnson's Second Amended Petition for Writ of Habeas



Corpus. (Dkt. 7.) Pursuant to E.D. Mich. LR 7.1(e)(2), the petition is ready for Report and Recommendation without oral argument.

## A.   FACTUAL BACKGROUND

On July 6, 1998, Petitioner was driving on the I-96 freeway in Wayne County, Michigan, when he was pulled over for speeding by two Michigan State Police troopers. When one of the troopers observed that Petitioner appeared nervous and that his hands were shaking uncontrollably, he requested permission to search the vehicle and Petitioner consented. (Rule 5 Mat.,[1] Evid. Hrng. Tr. dated October 23, 1998, at 8-9.) Two kilograms of cocaine were found in the back seat and approximately $1,100 in cash was found in Petitioner's pants pocket. Petitioner was arrested. He subsequently waived his Miranda rights and made a statement. (*Id.* at 53-54.) He was charged with possession with intent to deliver cocaine over 650 grams, MICH. COMP. LAWS § 333.7401(2)(a)(i). Petitioner's counsel brought two pre-trial motions: one to suppress the money and cocaine, and one to suppress Petitioner's statement. Following an evidentiary hearing, both motions were denied.

Pursuant to a plea agreement, Petitioner entered a plea of nolo contendere to simple possession of over 225 but less than 650 grams of cocaine, MICH. COMP. LAWS § 333.7403(2)(a)(ii), before Judge Carole Youngblood of the Wayne County Circuit Court, Criminal Division, in 1999.[2] Petitioner was sentenced to twelve to thirty years' imprisonment.

---

[1]The Rule 5 Materials are filed with the original habeas petition under case number 00-CV-10131-BC.

[2]The plea agreement explicitly stated that "the defendant may apply for leave to appeal the denial of his pre-trial motions." (Pet., Dkt. 1 at 6.)

**B.    POST-CONVICTION PROCEDURAL HISTORY**

Following his conviction and sentencing, Petitioner filed through counsel an application for leave to appeal[3] with the Michigan Court of Appeals, raising the following five claims:

I.    THE TRIAL COURT ERRED IN NOT FILING HER FINDINGS OR OPINION SETTING FORTH THE LAW WITH RESPECT TO THE APPELLANT'S MOTIONS TO SUPPRESS THE EVIDENCE SEIZED AND HIS INCULPATORY STATEMENT TO THE MICHIGAN STATE POLICE INTERROGATOR

II.    THE TRIAL COURT SHOULD HAVE SUPPRESSED THE EVIDENCE SEIZED FROM THE APPELLANT'S AUTOMOBILE BASED ON THE TESTIMONY ADDUCED AT HIS EVIDENTIARY HEARING

III.    A WARRANT WAS REQUIRED TO VALIDATE THE ACTION OF THE MICHIGAN STATE POLICE IN ANALYZING THE PACKET TAKEN FROM THE APPELLANT'S MOTOR VEHICLE BY AN OFFICER WHO DID NOT KNOW WHETHER IT CONTAINED COCAINE OR NOT

IV.    THE STATEMENT OF THE APPELLANT SHOULD HAVE BEEN SUPPRESSED IN LIGHT OF THE CLEAR TESTIMONY OF THE INTERROGATING OFFICER THAT HE PROMISED THE APPELLANT THAT, BY GIVING A STATEMENT TELLING WHERE HE OBTAINED THE DRUGS, AND FROM WHOM, HE WOULD MINIMIZE ANY SENTENCE THAT MIGHT BE IMPOSED FOR THE CAPITAL OFFENSE OF POSSESSION OF MORE THAN 650 GRAMS OF COCAINE

---

[3]Prior to 1994, Michigan was one of only a handful of states that provided an unconditional right of appeal for those who pleaded guilty. In 1994, however, the Michigan legislature submitted Proposal B to the electorate to decide whether to make appeals from plea-based convictions discretionary. The voters approved Proposal B. As amended, Article 1 § 20 of the Michigan Constitution now states that an accused is entitled "to have an appeal as a matter of right, except as provided by law an appeal by an accused who pleads guilty or nolo contendere shall be by leave of the court . . . ." The legislature subsequently enacted MICH. COMP. LAWS § 770.3(1)(c), providing for appeals from plea-based convictions by application for leave to appeal.

V.    THE PROVISIONS OF MCR 7.205 & MCL § 770.3(c) VIOLATE THE MICHIGAN CONSTITUTION WHICH ASSURES ALL CRIMINAL DEFENDANTS THE RIGHT OF APPEAL WITHOUT FILING AN APPLICATION FOR LEAVE TO APPEAL; AND THOSE PROVISIONS OFFEND THE FEDERAL AND STATE RIGHTS TO DUE PROCESS OF LAW, AND ESPECIALLY WHERE THE PEOPLE OF THE STATE OF MICHIGAN ARE LEFT FREE TO FILE APPEALS OF RIGHT IN CRIMINAL CASES

(Rule 5 Mat., Appl. for Lv. to Appeal (tense altered).)

The Michigan Court of Appeals denied the application for leave to appeal "for lack of merit in the grounds presented." (Rule 5 Mat., *People v. Johnson*, No. 221141 (Mich. Ct. App. Oct. 26, 1999) (unpublished order).)

Petitioner next filed through counsel an application for leave to appeal with the Michigan Supreme Court, raising the following two issues:

I.    WHETHER, WHERE A TRIAL JUDGE, AFTER A FULL BLOWN EVIDENTIARY HEARING, MAKES NO FINDINGS OF FACT OR LAW, [ORDERS] DENYING A DEFENDANT'S MOTIONS TO SUPPRESS AND QUASH EVIDENCE AND STATEMENTS, ARE VOID.

II.   WHETHER ARTICLE I, §20 OF THE MICHIGAN CONSTITUTION RENDERS NUGATORY THE REQUIREMENT IMPOSED BY JUDICIAL AND LEGISLATIVE FIAT, THAT CONVICTED DEFENDANTS APPLY FOR LEAVE TO APPEAL, WHENEVER THEIR CONVICTIONS ARE THE RESULT OF PLEAS OF GUILTY OR NOLO CONTENDERE.

(Rule 5 Mat., Appl. for Lv. to Appeal to Mich. Sup. Ct. at 1-2.) The Michigan Supreme Court denied the application, stating that it was "not persuaded that the questions presented should be reviewed by this Court." (Rule 5 Mat., *People v. Johnson*, No. 115753 (Mich. March 28, 2000) (unpublished order).)

4

On April 7, 2000, Petitioner filed through counsel his first Petition for Writ of Habeas

Corpus which raised the following issues:

I.   THE PERSISTENT SELF INCRIMINATION PROBLEM

[Petitioner claimed that he was cajoled and unlawfully induced by an experienced Michigan State Police officer to incriminate himself in violation of his Fifth and Fourteenth Amendment rights.]

II.   WAIVER OF RIGHT TO APPEAL CONSTITUTIONAL ERRORS BELOW

[Petitioner asserted that "no State can limit the right of appeal of Federal Questions based on whether an accused agrees to a nolo, or guilty, plea, and especially in capital cases, where the incentive to cut one's losses becomes so great."]

III.   CONFLICTING PROVISIONS OF THE STATE CONSTITUTION RE: RIGHT OF APPEAL

[Petitioner argued that since a statement induced by a law enforcement officer's promise of leniency is involuntary and inadmissible under Article I, Sec. 17 of the Michigan Constitution, an application for leave to appeal pursuant to Article I, Sec. 20 that sets forth a violation of Sec. 17 "would have to be granted" in order for a conflict to be avoided.]

IV.   THE NECESSITY OF THE TRIAL JUDGE MAKING FINDINGS OF RECORD

[Petitioner claimed that the trial judge failed to place findings on the record when denying the pretrial motions, which was "required by Michigan Law."]

V.   THE SEARCH AND SEIZURE ISSUE

[Petitioner contended that his Fourth and Fourteenth Amendment rights were violated by the search of his vehicle, the seizure of property, and the warrantless testing of suspected narcotics.]

(Case No. 00-CV-10131-BC, Dkt. 1.)

On December 20, 2000, I issued a Report and Recommendation ("R&R") recommending that the petition be dismissed without prejudice for failure to exhaust state court remedies because Petitioner had failed to raise three of his five habeas claims before the Michigan Supreme Court, and therefore those three claims were unexhausted, which rendered the habeas petition a "mixed petition." The R&R stated that "only habeas claims II and IV were presented to both the Michigan Court of Appeals and the Michigan Supreme Court," and therefore only habeas claim II ("waiver of right to appeal constitutional errors below") and habeas claim IV ("the necessity of the trial judge making findings of record") were properly exhausted. (Case No. 00-CV-10131-BC, Dkt. 11.) Further, the R&R informed Petitioner that, after the dismissal without prejudice of the first petition, he could either refile the complete petition after exhausting the three claims by raising them in a motion for relief from judgment with the state trial court and appealing the outcome of that motion to both Michigan appellate courts, or he could delete the unexhausted claims from the habeas petition and immediately refile it.

Petitioner chose the latter option. On December 28, 2000, Petitioner filed (again through counsel) his "resubmitted" petition, which was assigned case number 00-CV-10497-BC and which purports to raise only the two exhausted claims. The two claims contained in the resubmitted petition, however, are two of the unexhausted claims from the first petition.

On March 9, 2001, Respondent filed its answer to the resubmitted petition, asserting that it suffers from the same procedural flaws as the first petition, namely that it contains unexhausted claims. (Dkt. 5 at 3.) Respondent therefore contends that the resubmitted

6

petition should either be dismissed for failure to exhaust or denied on the merits pursuant to 28 U.S.C. § 2254(b)(2). (Dkt. 5, Br. in Supp. at 7.)

On September 5, 2001, U.S. Magistrate Judge Paul Komives issued an Order Requiring Petitioner to Clarify Amended Petition and Compelling Respondent to Produce State Court Record, in which the Court ordered Petitioner to file a Second Amended Petition clearly setting forth the claims on which he wishes to proceed. (Dkt. 6.) Petitioner's counsel complied with the order and filed a Second Amended Petition for a Writ of Habeas Corpus on September 26, 2001, once again raising two of the unexhausted claims and asserting that they have been exhausted in the state courts. (Dkt. 7 at 2.)

**C.    LAW and ANALYSIS**

**1.    Standard of Review & Governing Law**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), govern this case because Petitioner filed his habeas petition after the effective date of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481 (1997).

The AEDPA altered the standard of review that a federal court must use when reviewing applications for the writ of habeas corpus. *See Felker v. Turpin*, 518 U.S. 651, 116 S. Ct. 2333, 2335, 135 L. Ed. 2d 827 (1996); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997). The new standard of review provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The statute's amended standard of review gave rise to different interpretations among the circuits until the United States Supreme Court illuminated its meaning. In *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), the Court held that a state court decision is "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. *Id*. at 1519. Additionally, a state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or if the state court either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 1520.

The AEDPA's standard of review applies when a federal court reaches the merits of a habeas petition's claims. However, there are procedural hurdles that a habeas petitioner must overcome before a federal court can reach the merits. As a general rule, a state prisoner seeking federal habeas relief must first exhaust his available state court remedies. *Hannah v. Conley*, 49 F.3d 1193, 1195 (6th Cir. 1995). Exhaustion requires that a prisoner "fairly

8

present" the substance of each federal constitutional claim to the state courts using citations to the United States Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns. *Levine v. Torvik*, 986 F.2d 1506, 1516 (6ᵗʰ Cir.1993). The claim presented in the habeas petition must be the "substantial equivalent" of the claim presented to the state. *Picard v. Connor*, 404 U.S. 270, 278, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971). State prisoners in Michigan must raise each claim in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal habeas corpus relief. *Dombkowski v. Johnson*, 488 F.2d 68, 70 (6ᵗʰ Cir. 1973). The exhaustion requirement was codified by the enactment of the AEDPA, which states that the writ of habeas corpus "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A).

A habeas petition containing both exhausted and unexhausted claims, which is known as a "mixed petition," should be dismissed in its entirety absent exceptional or unusual circumstances. *O'Guinn v. Dutton*, 88 F.3d 1409, 1412 (6ᵗʰ Cir. 1996) (citing *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982)). Following such dismissal, a petitioner may either file a new petition raising only his exhausted claims or return to state court and exhaust his remedies before refiling the complete petition in federal court. However, under the AEDPA, a district court also has the discretion to take a more drastic step and deny a petition in its entirety on the merits, notwithstanding the failure of the applicant to exhaust his available state remedies. 28 U.S.C. § 2254(b)(2).

2.      **"The Persistent Self-Incrimination Problem"**

Petitioner's first claim is that his statement should have been suppressed because he "was cajoled by an experienced Michigan State Police Officer to incriminate himself, by the flattery of hope for a reduction of a pending life sentence down to a 2 year sentence . . . ." (Second Amend. Pet., Dkt. 7 at 14.)

a.      **State Court Record**

Petitioner was charged with possession with intent to deliver more than 650 grams of cocaine, an offense which at the time was punishable by a mandatory life sentence. Petitioner's counsel made a pre-trial motion to suppress Petitioner's post-arrest statement, arguing that it was involuntary because it was induced by promises of leniency. The court held a hearing on the motion on October 23, 1998. Detective Lieutenant William Darnell of the Michigan State Police testified that he conducted the interview which took place at the police post following Petitioner's arrest. Detective Darnell testified that he began by asking Petitioner some preliminary questions, and then he read Petitioner his Miranda rights. (Pet'r's Supporting App., Dkt. 2, Mot. Hrng. Tr. at 50.) When he asked Petitioner if he understood his rights, Petitioner stated that he was "not clear on them," so Detective Darnell went over them two more times. (*Id.* at 52.) Petitioner then stated that he understood his rights, and Detective Darnell noted the date (July 6, 1998) and time (7:48 p.m.) on the Miranda rights card. The detective then began asking Petitioner questions about how he came in contact with the two kilos of cocaine found in his car. At some point, the detective showed Petitioner a newspaper article regarding comedian Tim Allen. Detective Darnell

10

testified that the article relayed that Tim Allen was caught with a kilo of cocaine, but because

he told the truth and identified his source for the drugs, he only spent two or three years in

prison. The detective stated that he uses this article to encourage suspects to help themselves

out by doing the right thing. Detective Darnell also testified, however, that he never made

Petitioner any promises:

> Q.    Did you tell him he was going to get two and a half years if he did that?
>
> A.    I told him that I cannot make him any promises, that it would be up to
>       the prosecutor, Mr. Doug Baker, second in charge of the Drug Unit. I
>       could not make any promises but that we could work with the
>       prosecutor.
>
> Q.    If what?
>
> A.    If he told us the truth and helped us in identifying the source of the
>       drugs.

(*Id.* at 57.)

Petitioner gave police the first name of his supplier, but stated he did not know the last

name, and did not give an address. Petitioner was asked to give a written statement, but told

Detective Darnell that he was not comfortable writing a narrative. Therefore, at 8:25 p.m.,

Detective Darnell wrote out a series of six questions, and Petitioner, after receiving his

Miranda warnings again, wrote answers to five of the six questions. (*Id.* at 53, 62.)

Petitioner stated that he was paid $1,100 to deliver the cocaine by a person named Mark, and

that he had delivered drugs three or four times in the past. Petitioner did not provide an

answer to the question, "Was your statement given voluntarily?"

11

Petitioner also took the witness stand at the motion hearing. Petitioner testified that he was twenty-three years old and had once attended special education classes at Robeshaw High School. (*Id.* at 66.) Petitioner then testified that Officer Darnell "came in the room and showed me a picture of Tim Allen and promised me like two years, two and a half years." (*Id.* at 70.) He testified that the officers refused to let him call his attorney or his mother and would only let him call his girlfriend. Petitioner also stated that he never really understood the Miranda warnings. (*Id.* at 73.)

Following Petitioner's testimony, the hearing was adjourned until December 18, 1998. According to the state court docket, on December 18 the hearing continued, and at the conclusion of the hearing the court denied the motion to suppress the statement.[4] A form order denying the motion was filed by the judge that day. Trial was scheduled for May 24, 1999, but on the morning of trial the prosecuting attorney informed the court that a plea agreement had been reached. (Rule 5 Mat., Plea Tr. of May 24, 1999, at 3.) Petitioner pleaded nolo contendere to the lesser offense of possession with intent to deliver more than 225 grams of cocaine with a sentence agreement of twelve to thirty years' incarceration. The agreement specified that, although Michigan law did not provide Petitioner with a right to appeal, he would not be precluded from filing an application for leave to appeal with the Michigan Court of Appeals.

On July 29, 1999, Petitioner filed through counsel an application for leave to appeal raising five claims, one of which was that the statement should have been suppressed because

---

[4]No transcript was ever prepared of the December 18, 1998, hearing.

"the interrogating officer . . . promised [Petitioner] that, by giving a statement telling where he obtained the drugs, and from whom, he would minimize any sentence that might be imposed for the capital offense of possession of more than 650 grams of cocaine." (Rule 5 Mat., Application for Lv. to Appeal at 30-31.)

The court denied leave to appeal "for lack of merit in the grounds presented"on October 26, 1999. (Rule 5 Mat., *People v. Johnson*, No. 221141 (Mich. Ct. App. Oct. 26, 1999) (unpublished order).)

On November 4, 1999, Petitioner filed through counsel an application for leave to appeal with the Michigan Supreme Court raising two claims. The application, however, did not raise the claim that his statement should have been suppressed because it was induced by a promise of leniency. (*See* Rule 5 Mat., Application for Lv. to Appeal to Mich. Sup. Ct. filed Nov. 4, 1999.)

**b.     Discussion**

Respondent correctly asserts that Petitioner failed to exhaust his state court remedies with regard to this claim by failing to include it in his application for leave to appeal filed with the Michigan Supreme Court. Therefore, this Court could once again recommend dismissal without prejudice on the grounds that Petitioner has again filed a mixed petition. However, I find that in the interest of judicial economy, the Court should proceed to address the merits of Petitioner's claim without requiring further state court proceedings because the claim does not provide the basis for habeas relief. 28 U.S.C. § 2254(b)(2); *Rockwell v. Yukins*, 217 F.3d 421, 424 (6th Cir. 2000).

13

Petitioner is entitled to federal habeas relief on the basis of this claim only if he can show that the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). When the record does not contain the state court's reasoning for its decision, a federal habeas court is to focus on the result of the state court proceedings and "conduct an independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). The review, however, is not to be a "full *de novo* review" of the claims, but rather is to remain deferential in light of the AEDPA's standards. *Id.* In this case, the record does not include the trial court's reasoning for its decision because no transcript was prepared of the final day of the suppression hearing. However, because we know that the court denied the motion, we do know that the court found that Petitioner's statement was given voluntarily. This result indicates that the court credited Detective Darnell's testimony that he made no promises to Petitioner, and that the court did not find credible Petitioner's contrary testimony. The habeas statute gives "federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S. Ct. 843, 74 L. Ed. 2d 646 (1983).

Supreme Court precedent clearly establishes that the Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions.

14

*Colorado v. Connelly*, 479 U.S. 157, 163-64, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986). A confession is considered involuntary if: (1) the police extorted the confession by means of coercive activity; (2) the coercion in question was sufficient to overbear the will of the accused; and (3) the will of the accused was in fact overborne "because of the coercive police activity in question." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir.1988). The coercive police activity may be either physical or psychological in nature. *Arizona v. Fulminante*, 499 U.S. 279, 285-89, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991).

In determining whether a confession is voluntary, the ultimate question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104, 112, 106 S. Ct. 445, 88 L. Ed. 2d 405 (1985). The circumstances to be considered include: (1) police coercion; (2) length of interrogation; (3) location of interrogation; (4) continuity of interrogation; (5) suspect's maturity; (6) suspect's education; (7) suspect's physical condition and mental health; and (8) whether suspect was advised of Miranda rights. *Withrow v. Williams*, 507 U.S. 680, 693-94, 113 S. Ct. 1745, 123 L. Ed. 2d 407 (1993). Although all of these factors may be considered, the Supreme Court has stated that without coercive police activity, a confession should not be deemed involuntary. *Connelly*, 479 U.S. at 167 ("coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause").

In this case, the trial court concluded that Petitioner's statement to police was voluntary, and the Michigan Court of Appeals, when presented with the issue, denied leave

15

to appeal. Having reviewed the record, I suggest that the state court's determination that Petitioner's confession was voluntary is consistent with United States Supreme Court precedent and constitutes a reasonable application thereof. Petitioner was approximately 23 years old at the time he made the statement, could read and write, and had completed the ninth grade. He testified that he had just been taken off probation, so it was clearly not his first encounter with law enforcement. Petitioner was advised of his Miranda rights, they were explained to him twice, and he stated that he understood his rights before Detective Darnell began questioning him about the cocaine. Further, there is no evidence that Petitioner's physical or mental condition was impaired or that he was deprived of any necessity while in custody, and the length of the interrogation was under one hour.

I further suggest that the detective's act of showing Petitioner a newspaper article and encouraging him to help himself by giving up information about the origin of the cocaine did not rise to the level of coercion which could overbear Petitioner's will, and did not constitute a "promise of leniency" that rendered Petitioner's statement involuntary. *See United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir.1988) ("An interrogation agent's promise to inform the government prosecutor about a suspect's cooperation does not render a subsequent statement involuntary, even when it is accompanied by a promise to recommend leniency or by speculation that cooperation will have a positive effect."). *See also United States v. Nash*, 910 F.2d 749, 752-53 (11th Cir. 1990); *United States v. Meirovitz*, 918 F.2d 1376, 1379 (8th Cir. 1990). Accordingly, having scrutinized the relevant factors, I suggest that this claim does not entitle Petitioner to habeas relief because Petitioner's confession was

16

2:00-cv-10497-DML-CEB   Doc # 12   Filed 04/02/03   Pg 17 of 20   Pg ID 17

voluntary and his constitutional rights were not violated by the denial of the motion to suppress.

### 3.    "The Search and Seizure Issue"

Petitioner's second claim is that the evidence of the drugs should have been suppressed because they were seized and tested without a warrant in violation of Petitioner's Fourth and Fourteenth Amendment rights.  (Second Am. Pet., Dkt. 7 at 19.)

Respondent contends that Petitioner's Fourth Amendment claim is not cognizable in a federal habeas corpus proceeding due to the rule pronounced in *Stone v. Powell*, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976):

> [W]here the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial.

*Id.* at 482.  The Sixth Circuit applies a two-step process for determining whether a Fourth Amendment claim is reviewable in a habeas action:

> In *Riley v. Gray*, 674 F.2d 522 (6th Cir.1982), we set forth two distinct inquiries a court must perform when determining whether a petitioner may raise a [fourth amendment] claim . . . in a habeas action. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id.* at 526.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000).  The Sixth Circuit concluded that petitioner Machacek's Fourth Amendment claims were not reviewable by a federal habeas court because he failed both prongs of the test:

> In this case, the record reflects that petitioner was able to present his Fourth
> Amendment claims to the Michigan courts and that these claims were carefully
> considered and rejected at the trial level and on appeal. Machacek may be
> disappointed with his inability to persuade the Michigan courts that his
> statement was the product of an illegal arrest, but the record clearly shows that
> he received all the process he was due. Accordingly, any claims concerning
> the validity of his arrest are not cognizable on habeas review.

*Id.*

In this case, I suggest that Petitioner's Fourth Amendment claim is likewise barred

from review because Petitioner has not demonstrated either of the two required showings.

First, Petitioner has not shown that Michigan's "procedural mechanism, in the abstract," does

not present the opportunity to raise a Fourth Amendment claim, nor could he do so because

Michigan has a procedural mechanism which presents an adequate opportunity for a criminal

defendant to raise a Fourth Amendment claim. *See, e.g., People v. Ferguson*, 376 Mich. 90,

93-94 (1965) (motion to suppress); *People v. Harris*, 95 Mich. App. 507, 509 (1980).

Second, I suggest that the record amply demonstrates that efforts to raise this claim

were not in fact frustrated in Petitioner's case. Petitioner's trial counsel raised the issue in

a pre-trial suppression motion, and an evidentiary hearing was held. Petitioner also availed

himself of the opportunity to raise this claim at the appellate court level.

Accordingly, as in *Machacek*, the record reflects that Petitioner had the opportunity

to present his Fourth Amendment claim to the Michigan courts and that the claim was

considered and rejected. Like Machacek, Petitioner may be disappointed with his inability

to persuade the Michigan courts that the seizure was unconstitutional, but the record clearly

shows that he received all the process he was due. Therefore, because Michigan "provided

an opportunity for full and fair litigation of [Petitioner's] Fourth Amendment claim," I suggest that it is not cognizable on habeas review. *Stone*, 428 U.S. at 482. Accordingly, I suggest that Petitioner's Second Amended Petition be denied and the case be dismissed with prejudice.

## III.  REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

CHARLES E. BINDER
United States Magistrate Judge

DATED:  April 2, 2003

19

Copies to:   Mr. Milton R. Henry, Attorney at Law, 2560 Vhay Lane, Bloomfield Hills, MI 48304
             Ms. Janet A. Van Cleve, Assistant Attorney General, Habeas Corpus Division, P. O. Box 30217,
                 Lansing, MI 48913
             David M. Lawson, United States District Judge